IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATHAN B. EASTMAN,　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　Plaintiff,　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　v.　　　　　　　　　　　）　Civil Action No. 19-577
　　　　　　　　　　　　　　　　　　）
BRANDON SMITH, BLACKHAWK　　　　　）
SCHOOL DISTRICT INDUSTRIAL　　　　　）
TECHNOLOGY INSTRUCTOR,　　　　　　）
in his individual capacity,　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　Defendant.　　　　）

## MEMORANDUM OPINION

Presently before the Court is the Motion for Summary Judgment and brief in support filed by Defendant Brandon Smith in this matter (Docket Nos. 54, 55), Plaintiff Nathan B. Eastman's response and brief in opposition thereto (Docket Nos. 58, 59), and Defendant's reply (Docket No. 62). In addition to the motion and briefs, the Court has considered the parties' concise statements and counter statements of material facts and appendices that were filed in connection with the briefs (Docket Nos. 56, 57, 60, 61).

For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted.

## I.　　Factual Background

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts relevant to Defendant's summary judgment motion. This case involves an alleged violation of Plaintiff's constitutional rights arising out of an accident that occurred in the industrial materials classroom at Blackhawk Area Senior High School in Beaver Falls, Pennsylvania, on April 30, 2015. (Docket No. 19, ¶¶ 2, 3). On that day, Plaintiff, a minor student at the high school at the time, was in the process

of building a small wooden canoe.  (*Id.* ¶¶ 3, 5).  While operating a drill press to make a series of holes in a 2x4 piece of wood, the vise that was holding the wood onto the table slipped, at which point Plaintiff's hand was injured by the machinery.  (*Id.* ¶¶ 5-7; Docket No. 60, ¶¶ 7, 47).  Defendant, the school's industrial technology instructor, was Plaintiff's instructor in the class.  (Docket No. 19, ¶¶ 2-5).

Although the parties disagree about the exact nature of certain events that occurred prior to the accident, the Court – believing Plaintiff's evidence and drawing all justifiable inferences in his favor, as is required on summary judgment – considers the relevant events to have unfolded as follows.[1]  Prior to the accident, Defendant had supplied students, including Plaintiff, with a safety pamphlet indicating that projects should be secured to a drill press table by way of a vise or clamp.  (Docket No. 60, ¶ 46).  Defendant had also instructed Plaintiff and other students that if a vise was not clamped properly to a table, the vise could break free.  (*Id.* ¶ 43).  Defendant had further instructed that if a project breaks free of a clamp, the first thing to do is to turn off the power to the drill press, and never to put a hand near a moving drill bit.  (Docket No. 56, ¶¶ 23, 24).

---

[1]     The relevant facts are derived from the undisputed evidence of record and from the disputed evidence of record which is read in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Furthermore, Defendant has not responded to the additional responses and paragraphs set forth Plaintiff's Responsive Concise Statement of Material Facts (Docket No. 60) in accordance with Rule 56.D of the Local Rules of the United States District Court for the Western District of Pennsylvania.  The Court notes that, since Defendant has not responded thusly, the additional material facts contained in those paragraphs (those which cite to evidence of record that has been provided to the Court in accordance with Local Rule 56.C, and which can be construed as setting forth purportedly undisputed material facts) can be deemed admitted for purposes of deciding Defendant's summary judgment motion.  *See* LCvR 56.E.  On the other hand, the Court further notes that Plaintiff has not included in his Appendix (Docket No. 61) all of the deposition transcript pages to which he cites in his Responsive Concise Statement of Facts.  Regardless of whether such additional material facts are disputed or whether they are deemed admitted for purposes of deciding Defendant's motion, however, the Court reaches the same conclusions herein.

On this occasion, Defendant set up the vise before Plaintiff used the drill press. (Docket No. 60, ¶ 44). According to Plaintiff, Defendant did not use a clamp when he set up Plaintiff's boat hull project within the vise, so the vise was not clamped to the drill press table when Defendant drilled the first hole into Plaintiff's project. (*Id.* ¶¶ 45, 47, 48). According to Plaintiff, when he then began to drill, the wood began to shake when he lowered the drill bit, and his hand was pulled into the bit. (*Id.* ¶ 7). At the time of the accident, Defendant had turned his attention away from Plaintiff's activity in order to focus his attention on something else in the classroom. (Docket No. 19, ¶ 17; Docket No. 26, ¶ 17). Plaintiff's expert opined that the accident occurred in part because Defendant had failed to ensure that Plaintiff's project was clamped.[2] (Docket No. 60, ¶ 50).

The shop class in which the accident occurred was an elective class, Plaintiff did not have any disabilities, and Plaintiff was not dependent on a teacher to assist him with the project on a one-to-one basis. (Docket No. 56, ¶ 26). Plaintiff testified that he had been instructed on use of the drill orally, in writing, and through actual demonstration, and that Defendant had also instructed him before the accident never to put his hand near a moving drill bit. (*Id.* ¶ 20). Plaintiff does not contend that Defendant was doing anything unlawful in turning away from the drill press, and he admits that Defendant was allowed to assist other students at the time of the accident. (*Id.* ¶ 29). Plaintiff and six other students admitted in deposition testimony that Defendant was an "open guy" of whom one could ask questions. (*Id.* ¶ 27). Plaintiff also admitted that, to his knowledge, Defendant did not want Plaintiff to get hurt. (*Id.* ¶ 28).

---

[2]     In his Amended Complaint, Plaintiff alleges that Defendant is liable, at least in part, based on the theory that Plaintiff was directed to use a broken drill press and that the injury was caused, at least in part, by his using that broken machine. (*See* Docket No. 19, ¶¶ 27, 28). In response to Defendant's summary judgment motion, however, Plaintiff appears not to pursue this theory and argues that inadequate clamping caused his injury. (*See* Docket No. 59 at 5-6).

On May 16, 2019, Plaintiff timely filed his Complaint in this matter (Docket No. 1). On June 6, 2019, Defendant filed a motion to dismiss Plaintiff's Complaint. (Docket Nos. 6, 7). After hearing oral argument on July 23, 2019, the Honorable Joy Flowers Conti granted Defendant's motion without prejudice to Plaintiff's right to amend the Complaint. On August 19, 2019, Plaintiff filed an Amended Complaint. (Docket No. 19). Defendant filed a motion to dismiss Plaintiff's Amended Complaint on August 30, 2019. (Docket Nos. 20, 21). On October 11, 2019, Judge Conti denied Defendant's second motion to dismiss. (Docket No. 25). Thereafter, Defendant filed his Answer to the Amended Complaint, and discovery ensued. The case was reassigned to this judicial officer on September 23, 2020.

The Amended Complaint includes a single Count against Defendant, alleging a violation of Plaintiff's civil rights under the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count I). (Docket No. 19 at 5-11). Plaintiff seeks compensatory and punitive damages, plus cost of suit, interest, and attorney fees.[3] (*Id.* at 10). Defendant filed his Motion for Summary Judgment, which has been fully briefed by the parties, and the motion is now ripe for decision.

## II.  <u>Standard of Review</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute

---

[3]     Plaintiff indicates in his Response to Defendant's Motion for Summary Judgment that, after having engaged in discovery, he is withdrawing his claim for permanent damage to his earning power. (Docket No. 58, ¶ 8).

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).   A disputed fact is material if it might affect the outcome under the substantive law. *See Boyle v. Cnty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Anderson*, 477 U.S. at 247-48).   Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. *See Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *See Boyle*, 139 F.3d at 393.   The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *See Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991).   Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. at 324.

### III.   <u>Discussion</u>

As previously indicated, Plaintiff's Amended Complaint contains a single claim against Defendant for violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983.  (Docket No. 19 at 5).  More specifically, Plaintiff brings suit pursuant to the "state-created danger" doctrine

under the due process clause of the Fourteenth Amendment to the United States Constitution. (*Id.* ¶¶ 30, 31; Docket No. 59 at 4-5).

### A.  <u>Applicable Law</u>

Section 1983 is the "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980), and 42 U.S.C. § 1983). Section 1983 does not create substantive rights by its own terms, but it instead provides remedies for violations of rights that are established elsewhere in the Constitution or in federal law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). In order to establish a claim under Section 1983, two criteria must be met:  1) the conduct complained of must have been committed by a person acting under color of state law; and 2) the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir.1998).

While the due process clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect individuals from harm caused by private citizens, one exception to this rule is the "state-created danger" exception. *See Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989); *Kneipp*, 95 F.3d at 1204-05. In order to establish a meritorious state-created danger claim, a Plaintiff must prove:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the Plaintiff existed such that the Plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quotation marks and footnotes omitted).

Although Defendant asserts that Plaintiff has not established a state-created danger claim because the conduct alleged in the Amended Complaint does not "shock the conscience," Defendant argues that, even if the Court assumes that the state-created danger elements *are* established, Defendant is entitled to qualified immunity in this matter.[4]  For purposes of considering Defendant's motion, and in accordance with Defendant's reasoning, the Court will therefore jump ahead to consider whether the defense of qualified immunity is available to Defendant here.

According to the United States Supreme Court, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  The Supreme Court has set forth a two-pronged inquiry for use in analyzing the defense of qualified immunity.  *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).  The first prong concerns whether the conduct at issue violated a federal right.  *See id.*  "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."  *Id.* at 656.  Courts may use their discretion in deciding which of the two prongs of the qualified immunity they should tackle first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[4]      In denying Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Judge Conti did not discuss the defense of qualified immunity at great length, noting that Defendant raised such defense only in a conclusory manner and did not develop such argument.  (Docket No. 25 at 4 n.1).

The Supreme Court has further refined the defense of qualified immunity, indicating that it "'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dorley v. S. Fayette Twp. Sch. Dist.*, No. 2:15-cv-00214, 2016 WL 3102227, at *3 (W.D. Pa. June 1, 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  Thus, such a constitutional right "is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Id.* (quoting *Mullenix*, 577 U.S. at 11)).  Although there does not have to be "'a case directly on point'" to find qualified immunity appropriate in a particular instance, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Id.* (quoting *Mullenix*, 577 U.S. at 12)).  Furthermore, in considering the clearly established law aspect, "the right may not be defined 'at a high level of generality.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 742).  Therefore, the Court's inquiry into the constitutional right upon which a plaintiff says a defendant "infringed 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Id.* (quoting *Mullenix*, 577 U.S. at 12).

**B.  Qualified Immunity Analysis**

In moving for summary judgment, Defendant argues that he is entitled to qualified immunity as to the claim against him because the constitutional right that Plaintiff alleges was violated was not clearly established at the time of Plaintiff's accident.  In order to determine whether a defendant is entitled to qualified immunity, a court must first define the *particular* constitutional right at issue that was – or was not – "clearly established."  *See Dorley*, 2016 WL 3102227, at *3.

In the Amended Complaint, Plaintiff does not define with particularity the right that was allegedly violated.  Rather, Plaintiff sets forth therein more general allegations including, for example, that the injuries he suffered "were the foreseeable result of the deliberate indifference of the Defendant as set forth [herein], which constitutes the state created danger that caused or was a substantial factor in causing Plaintiff to be deprived of his constitutional rights to personal protection to which he is entitled" under Section 1983 and the Fourteenth Amendment.  (Docket No. 19, ¶ 30).   After engaging in discovery and narrowing his claim,[5] however, Plaintiff "acknowledges" in his opposition brief that there is no "case exactly on point in the context of failing to clamp a vise to a drill press table."  (Docket No. 59 at 13).  Thus, the specific right at issue in this case appears to be, in Plaintiff's own words, his right to be protected from the failure to clamp a vise to a drill press table.

As explained previously, the question for the Court in applying the qualified immunity doctrine is not only whether Defendant's alleged conduct violated Plaintiff's constitutional right, but also whether, at the time of the episode that is the subject of the Amended Complaint, it was clearly established or "'beyond debate' that this conduct was unconstitutional," and the Court may examine either prong of the analysis first.  *Dorley*, 2016 WL 3102227, at *5.  Here, in analyzing the "clearly established" prong, the Court notes that, although it is perhaps difficult in an instance such as this for Defendant to prove a "negative" (*i.e.*, to cite a case showing that the specific right alleged by Plaintiff is *not* clearly established), Defendant does cite to a number of cases (cases that both parties admit are factually distinct from the present case) to support his argument.  Although Plaintiff, in response, does not address all of the cases that Defendant cites, Plaintiff argues that the facts of the cases cited by Defendant, to show that there is no "clearly

---

[5]      As previously indicated, Plaintiff originally claimed that Defendant directed him to use a defective drill press, but that aspect of his claim appears to have been abandoned as Plaintiff argues in response to Defendant's summary judgment motion that inadequate clamping caused his injury.

established" right here, are simply *too different* from the facts of the present case to support Defendant's position.   (Docket No. 59 at 11-14).   Instead, Plaintiff argues that the situation presented here is more similar to other cases that he cites (cases that are admittedly also factually distinct from the present case), in which courts found that defendants were *not* entitled to qualified immunity.

The first case that Defendant cites to support his position in favor of qualified immunity, and which Plaintiff also specifically addresses, is *Lichtenstein v. Lower Merion School District*, 316 F. Supp. 3d 855 (E.D. Pa. 2018), in which the District Court for the Eastern District of Pennsylvania, considering a student's Section 1983 claim, found that school officials were not on notice of the existence of a clearly established constitutional right.   In that case, a special needs student was injured while being transported in a broken chair to a high school pool.   *See id.* at 861-62.   The plaintiff in *Lichtenstein* alleged that school officials acted with deliberate indifference since they were aware of the chair's unsound condition and the harm that could result to the plaintiff if the chair broke, which it did.   *See id.* at 867-68.   In its analysis of qualified immunity, the court concluded that no special relationship theory or state-created danger theory case had prevailed in a context sufficiently similar to the facts of that case so as to provide notice of the alleged constitutional right at issue there.   *See id.* at 872.

Defendant argues that the facts of *Lichtenstein* are more troubling than are the facts of this case, in that here there is no "weakened chair" or student with special needs to consider, yet the court in *Lichtenstein* found that school officials were immune from suit.   The Court notes that, while Defendant cites *Lichtenstein* as being relevant to Plaintiff's argument that his injury was caused by Defendant directing him to use a broken drill press, as noted *supra*, Plaintiff now appears to have abandoned the theory involving a broken drill press in favor of the theory that

his injury was caused by Defendant's failure to clamp his project to the drill press table.  Thus, in the absence of the broken drill press theory, Plaintiff argues that the facts of *Lichtenstein* are so different from the facts presented here that *Lichtenstein*'s holding is irrelevant in the context of this case.[6]  In any event, regardless of the theory being pursued in this case, the Court finds that *Lichtenstein* does not establish whether the right that Plaintiff alleges was violated here was – or was not – a "clearly established" constitutional right.

Among other cases cited in support of his summary judgment motion, Defendant cites to one case the facts of which are quite similar to the facts of the present case, *Voorhies v. Conroe Independent School District*, 610 F. Supp. 868 (S.D. Tex. 1985).  In that case, a shop teacher removed a safety guard on a saw that subsequently injured a student.  *See id.* at 868-69, 872.  In *Voorhies*, however, after reviewing the evidence, the court found that the plaintiff's expert had not provided any facts to support his opinions, and therefore the evidence presented was inadequate to controvert the defendant's facts and defeat the defendant's motion for summary judgment.  *See id.* at 873.  In granting the defendant's summary judgment motion on such basis, however, the court did not reach the issue of qualified immunity.  Plaintiff therefore notes that, in the present case, the experts and Defendant himself all agree that use of a clamp to secure the vise to the table was an essential safety measure in operating the drill press, so *Voorhies* is distinguishable from this case.  Regardless of whether the facts of *Voorhies* and this case are sufficiently similar, the Court notes that, since the *Voorhies* court did not address the defense of qualified immunity, that case – where a shop teacher removed a safety guard on a power saw causing the student to injure his hand – does not establish that there *was not* a "clearly

---

[6]     Plaintiff does contend, however, that *Lichtenstein* is relevant to showing that, because an issue of material fact exists here as to whether the project was clamped, summary judgment in favor of Defendant is precluded, but as noted *supra*, the Court is already assuming for purposes of summary judgment that the project was not clamped, so such contention does not make *Lichtenstein* relevant to this case.

established" constitutional right at issue, but neither did that case put Defendant on notice that such a right *was* "clearly established."

Defendant goes on in his briefing to cite a variety of other cases – many of which Plaintiff does not address in his opposition brief, and none of which are factually similar to the present case – but all of which Defendant indicates lend further support to his contention that he is entitled to qualified immunity because the allegedly violated constitutional right here was not "clearly established."  *See, e.g., Foster v. Missouri Dep't of Health & Senior Servs.*, 736 F.3d 759 (8th Cir. 2013) (finding that employees of the Missouri Department of Senior and Health Services were entitled to qualified immunity in a case brought by owners of a home health care company, where there was no showing that the defendants' actions were inspired by malice or that any such actions constituted a brutal and inhumane abuse of power); *Perez v. Unified Gov't of Wyandotte Cnty.*, 432 F.3d 1163 (10th Cir. 2005) (finding that a fire truck driver, who had struck and killed an oncoming motorist while responding to an emergency call, was entitled to qualified immunity as a matter of law where there was no alleged intent to harm); *Turney v. Waterbury*, 375 F.3d 756 (8th Cir. 2004) (granting a deputy qualified immunity because he did not know that an arrestee was a suicide risk, although he was told to keep a close eye on the arrestee); *Mann v. Palmerton Area Sch. Dist.*, 189 F. Supp. 3d 467 (M.D. Pa. 2016) (granting a football coach qualified immunity where a high school player suffered a traumatic brain injury during football practice, when the complaint alleged affirmative acts that increased the danger of serious injury in that the player suffered one hard hit, was told to continue practicing, and then was hit again); *S.W. v. Clayton Cnty. Pub. Schs.*, 185 F. Supp. 3d 1366 (N.D. Ga. 2016) (granting qualified immunity to a school principal and district superintendent, where a student alleged sexual assault by a teacher, but there were no allegations that the defendants knew that a teacher

would act unlawfully toward any student, nor was actual malice pled); *Collier v. Clayton Cnty. Cmty. Serv. Bd.*, 236 F. Supp. 2d 1345 (N.D. Ga. 2002) (holding that a community service board was entitled to qualified immunity in a case brought against them by an employee, where the law was not sufficiently established to alert them that they might have been acting illegally); *Reeves by Jones v. Besonen*, 754 F. Supp. 1135 (E.D. Mich. 1991) (holding that, even if a high school football coach had a constitutional duty to protect a player from assault by fellow students, the coach was shielded by qualified immunity because there was no prior decision that had ruled that school officials were constitutionally required to protect a student from assault during extracurricular activities).

Plaintiff, in opposing Defendant's motion, acknowledges that there are no cases precisely on point here, but he argues that there need not be a prior case exactly like this one, and he instead asserts that this case is "more akin to those situations where the conduct and resulting injuries are a near certainty, and for those reasons are more closely aligned with case[s] such as *Stoneking* and *Kniepp*."  (Docket No. 59 at 14).  In *Stoneking v. Bedford Area School District*, 882 F.2d 720 (3d Cir. 1989), a former student sued a school district, a principal, an assistant principal, and a superintendent for a teacher's sexual abuse.  Ultimately, the United States Supreme Court remanded the case to the Court of Appeals for the Third Circuit, which held that the district court did not err in denying the principal and assistant principal's summary judgment motion based on grounds of immunity, but that the superintendent's summary judgment motion should have been granted.  In that case, the record indicated that the principal and assistant principal had actual knowledge of the situation involving the teacher and engaged in affirmative acts, but the superintendent did not engage in any affirmative acts.  *See id.* at 730-31.  In *Kniepp v. Tedder*, 95 F.3d 1199, 1201-03 (3d Cir. 1996), police officers left an intoxicated woman to

walk home alone after having her husband leave the scene, after which she fell down an embankment and suffered brain damage.  In that case, the Court of Appeals for the Third Circuit found that the district court erred in granting summary judgment in favor of the officers, who knew the woman was extremely intoxicated, separated her from her source of protection, and then abandoned her.  *See id.*  at 1210-11.  Plaintiff also cites to *Sciotto v. Marple Newton School District*, 81 F. Supp. 2d 559, 561 (E.D. Pa. 1999), in which a high school student wrestler was seriously injured, and became a quadriplegic, when he was forced by his coach to wrestle a much larger college graduate wrestler.  In *Sciotto*, the court did not find that the coach was entitled to qualified immunity, and did find that a reasonable official in the coach's circumstances would have understood the contours of the clearly established right at issue there, but, notably, a question of fact also existed as to whether the wrestler alumni had intent for assault and battery on the student.  *See id.* at 572, 576-77.  The Court notes that the facts of all three of these cases vary significantly from the facts of the present case.

Meanwhile, Plaintiff makes no attempt to distinguish *Dorley*, another case from this district upon which Defendant relies in briefing, from the present case.  In *Dorley*, the Honorable Mark R. Hornak, who is now Chief Judge of this district, held that coaches were entitled to qualified immunity where a student alleged that the coaches encouraged violence and aggression by upperclassmen upon underclassmen in football drills, and where the plaintiff contended that his clearly established right to be free from bodily injury under the Fourteenth Amendment was violated by a state-created danger.  *See* 2016 WL 3102227.  In his opinion in *Dorley*, Chief Judge Hornak emphasized that, according to *Spady v. Bethlehem Area School District*, 800 F.3d 633 (3d Cir. 1989), the constitutional right at issue must be clearly established such that every reasonable official would have understood that what he was doing violates that right and that

existing precedent must have placed the constitutional question beyond debate.  *See id.* at *4-5 (citing *Spady*).  Chief Judge Hornak further commented that *Spady* was a "game changer in the school activities/state-created danger context."  *Id.* at *6.

Interestingly, in his brief Plaintiff does attempt to distinguish *Spady* from the present case.  In *Spady*, a section 1983 case arising out of a student's death by "dry drowning" after a mandatory swim class, the Court of Appeals for the Third Circuit determined that the deceased's physical education teacher was entitled to qualified immunity.  *See* 800 F.3d at 635.  The Court of Appeals concluded there that cases such as *Kneipp*, *Sciotto,* and *Stoneking* – the very cases that Plaintiff cites to support his argument that qualified immunity should not apply to Defendant in this case – did not equate to a "student-athlete's unfortunate accident," as was presented in *Spady*.  *See id.* at 639-41.  Although noting with regret that some of these cases "present heart-wrenching circumstances," the Court of Appeals found that "[t]o equate the intentional infliction of painful corporal punishment or the sexual molestation of a student, however, with a student-athlete's unfortunate accident during wrestling practice or a rare instance of a delayed drowning after a swim class is *a bridge too far*."  *Id.* at 640 (emphasis added).  The Court of Appeals remarked that, aside from *Kneipp* and *Sciotto*, the plaintiff had not brought to the Court's attention, nor could the Court find, any cases of controlling authority in any jurisdiction that clearly established the rule on which the plaintiff sought to rely.  *See id.* at 641.  In finding that there was no clearly established constitutional right at issue there, the Court of Appeals indicated that its decision was buttressed by numerous rulings from other courts that have addressed injuries caused by public-school teachers.  *See id.* (citing *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378-79 (11th Cir. 2002) (finding no viable claim where a student died after touching a high-voltage wire during a science experiment); *Voorhies*, 610 F. Supp. at 873 (discussed,

15

*supra*)).   Nevertheless, Plaintiff contends, without providing significant support for such argument, that the facts alleged in the instant case present far more egregious conduct than an "unfortunate accident," and that Defendant is therefore not entitled to qualified immunity in this matter.  (Docket No. 59 at 13-14).

Upon careful consideration of the various cases cited by the parties as well as the Court's independent research of the matter, it is evident that, in this particular case, Defendant was not on notice that the conduct alleged by Plaintiff would violate a "clearly established" constitutional right.  In line with the reasoning of *Spady*, *Dorley*, and similar cases, even if Plaintiff did indeed have a constitutional right to be protected from the failure to clamp the vise holding his project to the drill press table, that right was not so "clearly established" in the *Mullenix/Spady* sense when this incident occurred that it can be found to be "beyond debate."  The Court acknowledges that, in determining that a right was "clearly established," it does not need to find that "the very action in question has previously been held unlawful."  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  However, it would simply be "a bridge too far" for the Court to find, considering the varied fact situations presented in the numerous cases discussed above, that it was "beyond debate" at the time of Plaintiff's accident that the right allegedly infringed upon was a "clearly established" constitutional right, such that a reasonable shop teacher would know that he was violating a student's constitutional right by failing to clamp a vise holding a project to a drill press table.

Additionally, aside from the fact that the various cases cited (other than *Voorhies*) are significantly different factually from the present case, the Court cannot find that the conduct alleged here is otherwise so egregious or intentionally harmful that it can be considered "beyond debate" that it violated Plaintiff's clearly established constitutional right at the time of the

incident at issue.  *See Spady*, 800 F.3d at 641.  In fact, even Plaintiff himself alleges – at most – Defendant's "incompetence," as he admits that the Supreme Court held in *Malley v. Briggs*, 475 U.S. 335, 241 (1986), that the defense of qualified immunity provides protection "to all but the plainly incompetent or those who knowingly violate the law," and that in the instant case, "Defendant falls squarely into the first category."  (Docket No. 59 at 13).

Moreover, Plaintiff admittedly does not suggest that Defendant held any grudge or wanted Plaintiff to get hurt, or that Defendant was doing anything unlawful at the time of the incident, and Plaintiff admits that Defendant was allowed to assist other students in the classroom at the time the accident occurred.  (Docket Nos. 56, ¶¶ 28, 29; 60, ¶¶ 28, 29).  Plaintiff also admits that the shop class in which the incident occurred was an elective, that Plaintiff did not have any disabilities, and that Defendant was not required to assist Plaintiff on a one-to-one basis.  (Docket Nos. 56, ¶ 26; 60, ¶ 26).  Further, Plaintiff testified to having been given triple instruction on using the drill – oral, written, and actual demonstration – and Defendant had instructed him never to put his hand near a moving drill bit.  (Docket Nos. 56, ¶ 20; 60, ¶ 20). Defendant had also instructed Plaintiff and other students that if a vise was not clamped properly to a table, the vise could break free, and that if a project breaks free of a clamp, the first thing to do is to turn off the power to the drill press.  (Docket Nos. 56, ¶ 23; 60, ¶¶ 23, 43).  Thus, here there is no indication, by allegation or through the evidence presented, that Defendant's conduct was intentionally or purposefully focused on causing physical harm to Plaintiff.

Chief Judge Hornak observed in *Dorley* as follows:

> As the *Spady* Court observed, colorable constitutional violations had previously been found in cases in which an adult educator directly engaged in conduct that was both egregious *and* intentionally and purposefully focused on causing physical harm to a student. *See Spady*, 800 F.3d at 641 (citing cases in which an adult struck a student with a blunt object, knocking out an eye, and in which an adult picked up a student by the throat and rammed his head into

bleachers and a fuse box).  The *Spady* Court then contrasted those situations, each involving what was in reality direct physical battery, with the array of *Sciotto*-like cases, each of which (no matter the outcome) involved (as pled) grossly negligent or reckless conduct which created a real and appreciable risk of serious harm, but lacked an intent-to-injure component, and concluded that at least as of September 1, 2015 (the date *Spady* came down) the constitutional rights at issue in *Sciotto* were not so "clearly established" as to be "beyond debate."  It is that rule of law that this Court is bound to apply here.

2016 WL 3102227, at *5.

Similarly, here the Court finds that, even if Plaintiff had a constitutional right to be protected from the failure to clamp the vise containing his project to the drill press table, that right was not so "clearly established," in light of *Spady*/*Mullenix*, when the incident at issue here occurred, that it was "beyond debate."  Accordingly, the Court concludes that Defendant is entitled to the defense of qualified immunity as to Plaintiff's claim against him.

## IV.   <u>Conclusion</u>

Based on the foregoing, Defendant's Motion for Summary Judgment is granted. Accordingly, summary judgment is granted in favor of Defendant as to Count I of Plaintiff's Amended Complaint.

An Order consistent with this Memorandum Opinion follows.

Dated: January 31, 2023                              <u>*s/ W. Scott Hardy*</u>
                                                     W. Scott Hardy
                                                     United States District Judge

cc/ecf:  All counsel of record